## Farra et al. v. Begley et al.

May 30, 1947.

Rehearing denied December 19, 1947.

S. M. Ward, Judge.

Bailey P. Wootton and Sylvester Little for appellants.

Napier & Napier for appellees.

OPINION OF THE COURT BY JUDGE LATIMER—Affirming.

The question to be determined here is whether or not the mining operation of the owners of a junior patent is situated within the portion of the boundary where the junior patent overlaps a senior patent.

Appellants, as plaintiffs below, filed an equitable action asserting title to a boundary of land on Gay's Creek in Perry County, which was a portion of a 1000-acre survey issued to Jesse Begley under survey and patent of May 10, 1848.

Appellees assert title to a 20-acre patent issued to H. M. Begley on a survey made December 10, 1918. This junior patent contains the following: "But excluding therefrom the land comprised in said boundary covered by said Jesse Begley 1000 acre survey."

. Appellants took the position that the mining operation was within their boundary where the junior patent overlaps the senior patent. Appellees, while admitting there is an overlap, contend that the mining operation was outside of the overlapping portion. They further contend that prior to the time appellants purchased the land in question, their mine was in operation; that appellants had purchased coal from them from this mine; that appellants had undertaken to purchase their land; and that in view of these facts their purchase of this overlapped portion was champertous and therefore void.

Upon submission of the cause the court below ruled in favor of appellees, holding that the mine operation was entirely without the land of appellants. From that judgment appellants prosecute this appeal.

In their brief appellants commence with laying much stress upon what they term map No. 1, which we conclude is a photo of the plat and survey. We have searched diligently through this record and find no such photograph or map here. Discussion then is made of appellees' map called map No. 2. Then reference is made to surveyor Joe Smith's map; to a map appearing in pink; and to a map by A. R. Eckert in 1946, all of which are here. Effort is made by appellants in the discussion of these maps to show errors in the map filed as an exhibit by appellees and the correctness of their own surveyor's map. We find also introduced herein a number of judgments showing the result of other litigation centered about this original 1000-acre patent with the description of certain boundaries of land in those judgments. These, according to the evidence, were also considered by the surveyors in making their surveys.

In going over this record it is impossible to erase from the mind the fact that these appellants knew of the operation of this mine; had bought coal from the operators, and had attempted to purchase the land before they obtained title to the property. It is significant also that it was testified by Elmira Price, who was not at all interested in this litigation, that the plaintiffs first secured the services of a surveyor by the name of Graham, who apparently refused to make the survey to the liking of the plaintiffs and quit the job. She further testified that Joe Smith came later and ran the line where the plaintiffs tried to get Graham to put it. Also undenied was the statement of surveyor Fitzpatrick that he did a little work with Joe Smith, the surveyor of appellants, when he was making his survey. He stated that Mr. Smith used N. 81 W. call and they changed it to N. 8 W., and further stated as follows:

"56. You were just running the line up there to get the coal mine on the outside of the judgment. A. I was not. I don't care anything about the judgment. Joe ran it and it didn't cover the line and he went back and reran it and came back and changed his map."

Mr. Fitzpatrick, surveyor of appellees, testified definitely and positively that the mine operation was without the overlapped portion. On the other hand, the surveyors for appellants testified just as positively that it was within the overlapped portion. The chancellor chose to accept the survey as made by appellees' surveyor, Fitzpatrick. A careful study of the numerous exhibits herein does not convince us he was wrong. So, according to the well established rule of this court that where we entertain no more than a doubt as to the correctness of the chancellor's ruling, we will not reverse but follow the chancellor. See Smith et al. v. Boone et al., 222 Ky. 1, 299 S. W. 1059; and Arnett's Executor v. Arnett's Executor, etc., 299 Ky. 254, 185 S. W. 2d 263.

Since we have concluded to follow the chancellor, it becomes unnecessary to discuss the matter of the allegedly champertous act of appellants, other than to say that the question raised there would have been a rather serious question in view of the attendant circumstances surrounding the purchase of the property by appellants. It is true that there could be no construc-

tive possession of this overlapped portion of patents. It was brought out in the evidence that appellees had never lived upon this 20 acre tract, but there was evidence that the boundaries had been pointed out by the father of the appellees during his lifetime, and it is true that before the purchase of this property by appellants, the appellees were in actual possession of that portion wherein the mine was situated, and had been operating the mine for a few years.

The judgment is affirmed.